IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STEVEN LAWAYNE NELSON, <br> TDCJ No. 999576 <br> Petitioner, <br><br> -VS- <br><br> LORIE DAVIS, Director, <br> Texas Department of Criminal Justice, <br> Correctional Institutions Division, <br><br> Respondent. | § § § § § § § § § § § § § § § § | CIVIL NO. 4:16-cv-904-A <br><br> *DEATH PENALTY CASE* |

## PETITIONER'S APPLICATION FOR REASONABLY NECESSARY FUNDS FOR AN EXPERT IN LIFE-LONG INCARCERATION

Petitioner Steven Lawayne Nelson, believing that expert services "are reasonably necessary for the representation of the defendant," requests approval to retain the services of an expert on the effects of life-long incarceration to assist counsel in representing Mr. Nelson during this federal habeas corpus proceeding. 18 U.S.C. § 3599(f); *see Panetti v. Quarterman*, 551 U.S. 930 (2007); *McFarland v. Scott*, 512 U.S. 849 (1994).[1] As detailed in Mr. Nelson's federal Amended Petition for a Writ of Habeas Corpus ("Amended Petition") (ECF No. 25), defense counsel failed to reasonably investigate issues related to Mr. Nelson's early-childhood trauma which led to Post-Traumatic Stress Disorder ("PTSD") and other trauma-related symptoms. Federal habeas counsel has engaged Dr. Bekh Bradley, a professor at Emory University and an expert in the area of childhood and adolescent trauma. Dr. Bradley found

---

[1] Though counsel respectfully submits that it would have been preferable and appropriate to file this Application *ex parte* and under seal, given the Court's order of January 24, 2017, *see* Order (ECF No. 32), and given the pressing importance of this request, counsel are filing this Application publicly.

1

that Mr. Nelson suffered from extreme childhood trauma, resulting in untreated trauma symptoms including PTSD. Dr. Bradley, a psychologist, recommended that an expert on the effects of life-long incarceration assess the impact that Mr. Nelson's extensive incarceration—particularly during his formative years—had on him, especially as it relates to whether and to what extent such incarceration exacerbated his PTSD symptoms or prevented him from developing skills for successful transition to adulthood. For the reasons set forth below, Mr. Nelson requests $4,500 for the aforementioned services.

Mr. Nelson, through three separate motions for funding for ancillary services, requests funding in excess of $7,500. On December 13, 2016, Mr. Nelson moved for leave to file *ex parte* and under seal an Application for Reasonably Necessary Funds for a Psychiatric Expert for a psychiatrist to assess Mr. Nelson to determine if he suffered from a mood disorder. *See* Petitioner Steven Lawayne Nelson's Motion for Leave to File *Ex Parte* and Under Seal A Motion for Funding for Ancillary Services in Accordance with 18 U.S.C. § 3599(f) (ECF No. 21). The Court denied that Application on January 24, 2017. *See* Order (ECF No. 32). Contemporaneous with this Application, Mr. Nelson is filing publicly his Applications for Reasonably Necessary Funds for a Psychiatric Expert and for a Fact Investigator. Because Mr. Nelson's state habeas counsel conducted no investigation into, *inter alia*, the effects excessive juvenile incarceration had on Mr. Nelson, this case presents special circumstances requiring funding above the $7,500 threshold set forth by 18 U.S.C. § 3599(g)(2).

I. **ARGUMENT**

    A. **The Services of an Expert on the Effects of Life-Long Incarceration Are Reasonably Necessary to Assist Counsel in Representing Mr. Nelson.**

In his Amended Petition, Mr. Nelson raises claims that he was deprived of the effective assistance of counsel when trial counsel failed to reasonably investigate material sentencing

2

issues. Mr. Nelson's defense counsel did not conduct a reasonable sentencing investigation, and now, in order to carry Mr. Nelson's burden of demonstrating what evidence could have been discovered had a reasonable sentencing investigation occurred, counsel for Mr. Nelson must undertake the reasonable investigatory steps that Mr. Nelson alleges his defense counsel failed to perform. Mr. Nelson has alleged that a reasonable sentencing investigation would have resulted in the discovery of, among other things, evidence that Mr. Nelson suffers from PTSD and comorbid mental health conditions.

In a report issued October 13, 2016, Dr. Bekh Bradley, a national expert in childhood trauma, noted that Mr. Nelson "was exposed to a remarkably high level of adverse life events and traumas" including "spending a significant majority of his adolescence and early adulthood in juvenile corrections facilities and jails." *See* Preliminary Report of Dr. Bekh Bradley, Ph.D. (Oct. 3, 2016), Amended Petition Ex. 159 at NELSON_01425. Dr. Bradley detailed Mr. Nelson's extensive history of involvement with the criminal justice system. Following his first incarceration, at age thirteen, Mr. Nelson spent the large majority of his adolescence and young adulthood in detention. *Id.* at NELSON_01420-22  Dr. Bradley found that Mr. Nelson's early adulthood incarceration "need[s] additional investigation and assessment" because, among other reasons, "it has been demonstrated that many environment characteristics common in correction environments can exacerbate symptoms similar to those found in traumatized individuals who already suffer from PTSD." *Id.* at NELSON_01427. Dr. Bradley further opined that "[b]eing in these environments during important developmental stages, when individuals typically develop key skills and capacities for successful transition to adulthood, has been demonstrated to negatively impact psychological development and impair ability to establish independent and adaptive functioning as an adult." *Id.* In providing his clinical recommendations, Dr. Bradley

noted that the importance of additional assessment of Mr. Nelson to include an "[e]xpert evaluation on the effects of life-long detention on [Mr. Nelson]'s ability to function." *Id.*

The assistance of an appropriate expert who can perform an assessment of the effects of life-long incarceration, as experienced by Mr. Nelson, is reasonably necessary for the representation of Mr. Nelson in federal court. Mr. Nelson has a serious need for such resources in order to show what mitigating evidence could have been discovered by a reasonable investigation by trial or state habeas counsel. Evidence showing the fruits of such an investigation is reasonably necessary to show a "reasonable probability" of a different outcome—the standard for prejudice. *See* 18 U.S.C. § 3599(f) ("Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant . . . .").

### B. Mr. Nelson's Case Requires Services in an Amount above the Presumptive Limit Because of its Unusual Character.

The combined cost of the services requested by Mr. Nelson in his three motions for funding for ancillary services exceeds the presumptive limit of $7,500 for investigative and expert assistance in capital federal habeas matters. Although $7,500 is the presumptive limit for investigative and expert assistance, Congress recognized that it is appropriate in cases of an "unusual character" for the courts to provide greater support. *See* 18 U.S.C. § 3599(g)(2).

Trial and state habeas counsel's total lack of diligence with regards to Mr. Nelson's mental health conditions, and the mitigating effects of those conditions, make this exactly the type of "unusual" case for which 18 U.S.C. § 3599(g) contemplates additional resources.

As detailed in Mr. Nelson's Application for Reasonably Necessary Funds for a Psychiatric Expert, trial and state habeas counsel failed to investigate numerous red flags of Mr.

4

Nelson's mental illness. *See* Application for Reasonably Necessary Funds for a Psychiatric Expert at 5. Neither trial counsel nor state habeas counsel engaged an expert to determine what consequences arose from Mr. Nelson's traumatic upbringing. *Id.* As evidenced by Dr. Bradley's report, defense counsel failed to engage an expert who could have properly diagnosed Mr. Nelson with PTSD or assess the effects that adverse life events and traumas had on Mr. Nelson. *Id.* An expert's evaluation on the effects of life-long detention on Mr. Nelson to assess whether it exacerbated his PTSD systems or prevented him from developing skills for successful transition to adulthood is necessary to determine what evidence trial counsel should have pursued and presented to the jury as part of Mr. Nelson's mitigation defense.

Federal habeas counsel is endeavoring now to complete the investigation that should have occurred at the trial and during state habeas proceedings. Mr. Nelson became aware of this specific need for funding only after counsel conducted an independent investigation and received a report from Dr. Bradley recommending these additional steps. As discussed above, Mr. Nelson's request for funding is based on the expert opinion of Dr. Bradley, targeted to specific issues, and modest in scope.

Counsel accordingly seek authorization to retain the services of an expert on the effects of life-long incarceration to assess the impact that Mr. Nelson's extensive incarceration has had on him, especially as it relates to whether his excessive incarceration exacerbated his PTSD systems or prevented him from developing skills for successful transition to adulthood.

## II. CONCLUSION

For the foregoing reasons, Mr. Nelson requests that the Court authorize the expenditure of $4,500 for the reasonably necessary services of an expert in the effects of life-long incarceration. Mr. Nelson further requests that the Court certify that any total expenditures

granted in excess of $7,500 are necessary to provide fair compensation for services of an unusual character or duration, and accordingly respectfully requests that the Court seek approval by the Chief Judge of the Circuit for these expenditures.

Respectfully Submitted,

_____
**Katherine C. Black**
State Bar No. 24064907
Texas Defender Service
1927 Blodgett Street
Houston, Texas 77004
TEL: (713) 222-7788
FAX: (713 222-0260
kateblack@texasdefender.org


_____
**Meaghan VerGow**
*Appearing Pro Hac Vice*
O'Melveny & Myers LLP
1625 Eye Street NW
Washington, DC 20006
TEL: (202) 383-5300
FAX: (202) 383-5414
mvergow@omm.com

*Counsel to Steven Lawayne Nelson, Petitioner*

*The local counsel requirement was waived by an order signed October 4, 2016

## CERTIFICATE OF SERVICE

On February 3, 2017, I served a copy of the foregoing pleading on the Office of the Attorney General by electronic mail at the following address:

**Stephen M. Hoffman**
Office of the Attorney General
Post Office Box 12548
Austin, Texas 78711-2548
TEL: (512) 936-1400
stephen.hoffman@oag.texas.gov

                                             **Katherine C. Black**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for Respondent on February 2, 2017, and he opposes the Motion.

                                             **Katherine C. Black**